UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:12CV-00057-JHM

BOODNARINE BOODRAM
a/k/a MIKE BOODRAM, ET AL.                              PLAINTIFFS

VS.

RONALD GLENN COOMES, ET AL.                             DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Ronald Coomes' Motion to Dismiss [DN 84] and Defendant Scott Crabtree's Motion to Dismiss [DN 85]. Fully briefed, these matters are ripe for review.

**I. BACKGROUND**

In 2010, Defendant Ronald Coomes ("Coomes") sought buyers for his company Philmo, Inc., a duct tape manufacturer located in Franklin, Kentucky. Coomes was motivated to sell due to the fact that "Philmo was low on cash and in need of additional operating funds." [Second Am. Compl., DN 77, at ¶ 13]. Soon after Coomes began his search for a potential buyer, Boodnarine Boodram a/k/a Mike Boodram,[1] owner and operator of Apollo Manufacturing Group, Inc. ("Apollo") located in Suwanee, Georgia, contacted Coomes concerning his interest in acquiring Philmo. As a result of these negotiations and Coomes' promise to sell Philmo to him, Boodram closed his tape converting business in Gainesville, Georgia. Id. at ¶¶ 16-17.

---

[1] Mike Boodram's wife, Shelleza Boodram, is also identified as a plaintiff in this action, but it does not appear that she had much of a role in the facts of this case, other than the signing of one document. Therefore, in order to avoid confusion, Mike Boodram will be identified as "Boodram," and collectively, Mike and Shelleza Boodram will be referred to as "Plaintiffs," unless otherwise indicated.

Ultimately, discussions between Coomes and Boodram culminated in the parties executing a Letter of Intent on December 9, 2010, which detailed Boodram's plan to purchase Philmo for $2,305,000.00 in a leveraged buyout. [Letter of Intent, DN 1-1]. As described by the Letter of Intent, the acquisition of Philmo involved two phases: Boodram would immediately purchase 49% of Philmo's stock for $200,000, and then, starting in 2015, Boodram would begin scheduled payments of $1,492,055.90 for the remaining 51% of the stock. Id. After signing the Letter of Intent, Boodram transferred $200,000 in cash and assets to Coomes.

In addition to a stock purchase, the parties agreed that Mike Boodram would work at Philmo as the Director of Operations. [Second Am. Compl., DN 77, at ¶ 24]. As Director of Operations, Mike Boodram implemented significant changes at Philmo, including bringing in new customers, negotiating beneficial contracts with existing customers, and developing brands held by Philmo. Id. at ¶¶ 26-30. In particular, Boodram renegotiated Philmo's contract with 3M and improved "Patriot Tapes," an underdeveloped brand held by Philmo. Id. Also, while at Philmo, Boodram noticed that Coomes took certain actions that threatened the financial well-being of the company. Plaintiffs identify four specific instances of Coomes' harmful conduct:

   a. Coomes owned a controlling interest in Patriot Gage, LLC a separate company. Coomes was running the payroll of Patriot Gage, LLC through Philmo;

   b. Coomes allowed Patriot Gage, LLC to use a substantial portion of Philmo's property rent-free.

   c. Coomes used the assets of Philmo to pay expenses related to real estate that was not owned by Philmo.

   d. Coomes sold the assets of Philmo, including seconds (duct tape that fails to meet the specifications of its customers), on the secondary market and did not record the sales on Philmo's books.

Id. at ¶ 31.

In March of 2011, Coomes presented Plaintiffs with a Stock Purchase Agreement ("SPA"), drafted by counsel for Philmo, Defendant Scott Crabtree. Mike Boodram and Shelleza Boodram executed the SPA on March 8, 2011 and March 6, 2011, respectively. However, Coomes did not sign the SPA on either date. [Second Am. Compl., DN 77, at ¶¶ 35-37]. After Plaintiffs had signed the SPA, Coomes informed them that because he had previously entered into a contract with a broker for the sale of Philmo, he could not sign the SPA and convey stock to Plaintiffs until the end of the contractual period. Further, Coomes explained that he "needed to execute a Promissory Note in Plaintiffs' favor so as to avoid paying a commission to his broker. . . ." and that "it was just a formality, and it did not affect or change their agreement." Id. at ¶¶ 39-40. On March 31, 2011, Coomes executed the Promissory Note [DN 1-3], drafted by Crabtree, which set forth the re-payment of $200,000 plus interest Plaintiffs had previously paid to Coomes.

Despite issues with closing the sale of Philmo, Boodram continued to comply with the "parties' agreement" by winding down his tape conversion business and contributing $215,000 in equipment and inventory to Philmo. [Second Am. Compl., DN 77, at ¶ 48]. Also, "[a]s compensation for Coomes' unilateral delay of the closing, Philmo agreed to pay rent for Plaintiffs' equipment." Id. at ¶ 49. This only lasted for two month though. During the entire process of closing his business and transferring assets to Philmo, Boodram avers that he repeatedly sought to complete the transaction with Coomes. Id. at ¶¶ 44, 50. "[D]espite Plaintiff Mike Boodram's repeated requests, Defendants refused to close on the agreement or convey the stock." Id. at ¶ 50.

In addition to problems with closing the deal, issues arose concerning Boodram's role as Director of Operations at Philmo. According to Boodram, in June of 2011, Coomes started

3

taking steps to prevent him from performing his work at Philmo by denying him access to Philmo's business records and excluding him from important meetings. Specifically, Coomes stopped Boodram from attending a significant meeting with 3M even though Boodram had helped Coomes prepare for it. In the end, this soured relationship resulted in Boodram receiving his final paycheck from Philmo in June of 2011.

Soon after being excluded from Philmo, Boodram contacted Coomes in order to resolve problems with the deal. Boodram claims that Coomes avoided his phone calls, texts, and email. Finally, in October of 2011, Boodram received a copy of the SPA, which had been executed by Coomes. Plaintiffs describe the SPA as having particularly unfavorable terms. For example, although the Letter of Intent originally called for an amortized payment for the remaining 51% of stock to start in 2015, the SPA required a balloon payment of $1.1 million by August 31, 2012. [Second Am. Compl., DN 77, at ¶ 70]. In addition to an altered payment schedule, the SPA provided a stock buy-back provision which allowed Coomes to "unilaterally" determine that Boodram failed to actively participate in Philmo and to repurchase the stock from Boodram at half the price it was sold to him. Id. at ¶ 71.

Plaintiffs surmise that Coomes signed and notarized the SPA at some point after April 13, 2011, not on March 31, 2011 as indicated on the document sent to them in October of 2011. Further, Plaintiffs contend that Coomes was aware that Boodram had closed his company in June of 2011 and that his creditors were pressuring him to close on the Philmo deal. As a result, "Coomes and Crabtree conspired to sign and notarize this SPA to limit Coomes' liability and/or extract a more favorable settlement from Mike Boodram." Id. at ¶ 67.

Plaintiffs filed suit on April 27, 2012 against Defendants Coomes and Philmo. [DN1]. On November 20, 2014, Plaintiffs filed their Second Amended Complaint joining Crabtree as a

defendant. [DN 77]. Since the filing of their suit, Plaintiffs note that Defendants have continued to misrepresent the date that Coomes signed the SPA in their pleadings. Id. at ¶¶ 82-86.

## II.  STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiffs' allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiffs must provide the grounds for their entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III.  ANALYSIS

Defendants Coomes and Crabtree each move to dismiss specific claims alleged against them pursuant to Fed. R. Civ. P. 12(b)(6). However, before discussing their grounds for dismissing based on Rule 12(b)(6), the Court must address Defendant Crabtree's initial assertion that Plaintiffs' claims must be dismissed for lack of jurisdiction based on Fed. R. Civ. P. 12(b)(1). Crabtree notes that Boodram filed for bankruptcy protection in the United States Bankruptcy Court in the Northern District of Georgia in 2013 and explains that Boodram's claims against him are barred due to that filing. Crabtree argues that although Boodram listed the present action on his schedule of assets, he failed to identify the claims specifically alleged against him on the schedule. As such, the claims against Crabtree remain with the Boodram's bankruptcy estate.

### A.  Crabtree's Dismissal of Claims Based on Fed. R. Civ. P. 12(b)(1)

A bankruptcy estate, with some exceptions, comprises of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. As part of the

5

required filings for bankruptcy, a debtor is obligated to provide a schedule of these assets. 11 U.S.C. § 521. Causes of action are included in the "legal and equitable interests of the debtor" that must be filed in the schedule of assets. In re Cannon, 277 F.3d 838, 853 (6th Cir. 2002). For causes of action that are included in the bankruptcy estate, "only the bankruptcy trustee has standing to pursue pre-petition causes of action." Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 461 (6th Cir. 2013) (citing In re Cannon, 277 F.3d at 853). However, property of the estate can be deemed "abandoned" and returned to the debtor if it is "not otherwise administered at the time of the closing of a case." 11 U.S.C.A. § 554(c). But, "[i]t is clear that an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554." In re Cundiff, 227 B.R. 476, 479 (B.A.P. 6th Cir. 1998) (citation omitted).

Plaintiff Boodram acknowledges the affirmative duty to disclose all assets in filing for bankruptcy, including this present suit. Boodram's amended schedule of assets, filed on August 28, 2013, contains the following:

> Debtor amends Schedule B to list the potential damages from the Civil Suit Boodnarine Boodram a/k/a Mike Boodram, Et Al. v. Ronald Glenn Coomes, Et. Al., Civil Action No. 1:12-CV-57-M, filed in United States District Court, Western District of Kentucky, Bowling Green Division.

In re Boodnarine Mike Boodram, 13-63780-MHM, Doc. No. 12 (Bankr. N.D. Ga. Aug. 28, 2013).[2]

The parties dispute whether the description provided in Boodram's amended schedule actually identifies claims against Crabtree as a potential asset because Plaintiffs did not formally join Crabtree as a party until the Second Amended Complaint was filed on November 20, 2014. Therefore, absent being informally told by Boodram, the trustee administering the estate would not have known about the joinder of Crabtree until 2014 [Mot. to Amend Compl., DN 54], and

---

[2] Neither party actually submitted the amended schedule for the Court; however, there appears to be no dispute concerning the contents of the filings, and thus, the Court will take notice of them.

the order discharging Boodram's bankruptcy case was filed in October of 2013. In re Boodnarine Mike Boodram, 13-63780-MHM, Doc. No. 16 (Bankr. N.D. Ga. Oct. 7, 2013). Unfortunately, 11 U.S.C. § 521 offers little guidance as to the level of specificity required in identifying assets in the schedule. In re Bonner, 330 B.R. 880 (B.A.P. 6th Cir. 2005) ("[T]here are 'no bright-line rules for how much itemization and specificity is required [under § 521(1)]' and that '[w]hat is required is reasonable particularization under the circumstances.'" (quoting In re Mohring, 142 B.R. 389, 395, quoted in In re Kromer, 202 F.3d 268, 2000 WL 32022, at *2 (6th Cir. 2000) (unpublished table decision)).

To support their position that the listing of the suit in the schedule was sufficient to provide notice to the trustee, Plaintiffs rely on In re Bonner. In Bonner, the bankruptcy court granted the Chapter 7 trustee's motion to reopen the debtors' case to administer a personal injury claim. In re Bonner, 330 B.R. at *1. Although the debtors had listed "Auto Accident Claim" on their schedule, the chapter 7 trustee successfully argued to the bankruptcy court that the description only encompassed a personal property claim, not a personally injury claim. Id. at *4. Reversing the bankruptcy court, the Bankruptcy Appellate Panel noted that it was not incumbent on the debtors to identify every potential claim that may arise out of the auto accident, and it was clear that the debtors did not attempt to hide this claim from the trustee. Id. *4-5. Further, the Panel's reversal seemed to be motivated by the fact that 11 U.S.C. § 704 requires trustees to investigate assets, and in that particular case, the trustee should have been placed on at least "inquiry notice" of the possibility that the debtors may have a personal injury claim based on the fact that the debtors had listed "Auto Accident Claim" on the schedule of assets. Id. at *5.

Plaintiffs also cite to Eun Joo Lee v. Forster & Garbus LLP, 926 F. Supp. 2d 482 (E.D.N.Y. 2013). Procedurally, the facts of Eun Joo Lee mirror much of those found here. In

Eun Joo Lee, the debtor only listed Fair Debt Collection Practices Act ("FDCPA") claims against NCOP XI, LLC ("NCOP") on her schedule of assets. Eun Joo Lee, 926 F. Supp. 2d at 489. The trustee chose not to administer the claims against NCOP during the bankruptcy case. Id. After the bankruptcy discharge, Eun Joo Lee[3] filed an action against both NCOP and Forster & Garbus LLP ("Forster") based on the same claims abandoned by the trustee. As a result, Forster moved to dismiss plaintiff's claims on the grounds that she failed to list the claims against them on her schedule of assets. Id. Before rendering a decision, the district court succinctly noted the important interests at stake:

> [I]t is sensible to require debtors to provide enough information for the trustee to be able to determine whether it is in the best interests of the estate to pursue the claim. If the trustee cannot evaluate the claim, then the estate's creditors may be deprived of a valuable asset. On the other hand, if the trustee has enough information to decide that the claim is not worth pursuing and no claim is brought, the creditors and the courts can be assured that the trustee made a purposeful decision to abandon the claim.

Id. at 490. The court concluded that even though the schedule only listed claims against NCOP, it sufficed in providing enough notice to the trustee that there might also be a claim against Forster. Id. In fact, the court found that the trustee would have discovered with "minimal investigation" facts to have uncovered FDCPA claims against Forster. Id.

Although Eun Joo Lee is only persuasive authority, it stands for the same proposition as discussed in Bonner. Namely, the debtor is clearly under an obligation to be forthcoming with a list of assets on his schedule, but this does not excuse a lack of investigation on the part of the trustee—a proposition supported by § 704. 11 U.S.C. § 704 (requiring the trustee to "investigate the financial affairs of the debtor"). In the present action, the Court finds no evidence to suggest that Boodram attempted to conceal claims against Crabtree by waiting to amend the complaint in 2014. Therefore, the only question is whether the trustee in Boodram's case could have

---

[3] Although Eun Joo Lee was a class action, this played no role in the final decision reached by the court.

discovered potential claims against Crabtree. The Court believes that he could have. Though it is clear that at the time of Boodram's bankruptcy filing that this case was at its infancy, Plaintiffs had already started to detail issues concerning the SPA and the role of "accounting and legal advisors" in the creation of the document in the First Amended Complaint filed in 2012. [DN 23]. There is no reason that the trustee could not have investigated the matter and uncovered potential liability for Crabtree.[4] Therefore, Court finds that the trustee abandoned all of Plaintiff Boodram's claims, and Plaintiffs have standing to assert claims against Defendant Crabtree.

### B. Crabtree's Dismissal of Claims Based on Fed. R. Civ. P. 12(b)(6) [DN 85]

As an alternative ground for dismissal of claims, Defendant Crabtree moves to dismiss five of the counts alleged against him for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, Crabtree argues that the Court must dismiss Plaintiffs' claims for fraud, negligent misrepresentation, state and federal securities violations, and aiding and abetting a breach of the covenant of good faith and fair dealing. Crabtree maintains that Plaintiffs do not satisfy the heightened pleading standards for the fraud, negligent misrepresentation, and securities claims. As to the aiding and abetting a breach of the covenant of good faith and fair dealing, Crabtree asserts that the cause of action does not exist under Kentucky law.

### 1. Fraud [Count II] and Negligent Misrepresentation [Count VIII]

The elements of fraud in Kentucky are as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. UPS v. Rickert, 996 S.W .2d 464, 468 (Ky. 1999). Kentucky adopted the tort of negligent misrepresentation in Presnell Const. Managers, Inc. v. EH

---

[4] The Court is not oblivious to the fact that Defendant Crabtree is attempting to convert bankruptcy protections that are meant for creditors into a shield from liability for himself. The likelihood of the trustee in Boodram's case attempting to reopen the proceeding is slim, and even slimmer that he would be successful.

Const., LLC., 134 S.W.3d 575, 581 (Ky. 2004). The relevant elements of negligent misrepresentation are as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Id. at 580 (adopting Restatement (Second) of Torts § 552).

Under the notice pleading standard of Fed. R. Civ. P. 8(a), plaintiff must simply set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 9(b) augments the notice requirement of Rule 8(a) in certain cases, requiring that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). For practical purposes of satisfying Rule 9(b), the Sixth Circuit requires that the pleading "specify 1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent." Morris Aviation, LLC v. Diamond Aircraft Indus., Inc., 536 F. App'x 558, 562 (6th Cir. 2013) (citing Republic Bank & Trust Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012)). The heightened pleading standard for fraud similarly applies to a claim for negligent misrepresentation under Kentucky law. Id.

Plaintiffs identify two specific instances of alleged fraud by misrepresentation and negligent misrepresentation within their responsive brief to Crabtree's Motion to Dismiss. Only the claim concerning Crabtree's alleged participation in fraudulently executing and notarizing the SPA applies in this instance.[5] Plaintiffs' Second Amended Complaint avers that "[f]rom

---

[5] Plaintiffs also discuss Coomes' alleged misrepresentation concerning the expiration of the broker contract. However, there is no suggestion that Crabtree misrepresented any information about the broker contract or even had anything to do with the broker contract.

10

October 25, 2011 through the summer of 2014 Crabtree . . . repeatedly presented the SPA as being duly executed by Coomes on March 31, 2011." [Second Am. Compl., DN 77, at ¶ 79]. This allegation provides the necessary elements to satisfy the heightened pleading standard as it contains the speaker, the misrepresentation, the approximate time that the statement was made, and how the statement was fraudulent.

Defendant Crabtree next argues that Plaintiffs fail to plead how Crabtree's alleged fraudulent statement concerning the execution of the SPA induced them to act Plaintiffs, i.e., the reliance element for fraud.[6] Under Kentucky law, both negligent misrepresentation and fraud require Plaintiffs to prove reliance on the false statement and injuries resulting from that reliance. Rickert, 996 S. W.2d at 468; Presnell, 134 S.W.3d at 580. In response, Plaintiffs consistently argue that they do not need to provide every fact or detail their whole case in their complaint— an undeniably true assertion. But Plaintiffs manage to avoid discussing how they could have relied on Crabtree's statement concerning the SPA made on October 25, 2011 (or after). To demonstrate reliance, Plaintiffs would need to show how they changed position based on Crabtree's alleged misrepresentation after October of 2011. Rickert, 996 S.W.2d at 469 ("[A] claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations."). However, by the time Crabtree made any statement concerning the SPA, Plaintiffs had already acted by signing the SPA and winding down their other businesses. Plaintiff's claim is implausible for this very fact, and therefore, Plaintiffs are foreclosed from pursuing this theory of fraud against Crabtree.

---

[6] Crabtree, in part, attempts to refute this allegation by introducing deposition testimony obtained in prior discovery. Under Fed. R. Civ. P. 12(d), the Court is permitted to convert a motion to dismiss to a motion for summary judgment and consider "matters outside the pleadings," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12. Crabtree did not discuss the deposition until his reply brief, and thus, Plaintiffs lacked the opportunity to discuss this evidence. As a result, the Court will only look to the Plaintiffs' Second Amended Complaint for any facts necessary for analyzing this claim.

Although much of Defendant Crabtree's initial argument concerning the dismissal of the fraud and negligent misrepresentation claims revolves around alleged misrepresentations, he also seeks to preclude Plaintiffs from pursuing a theory of fraud by omission. The elements of fraudulent omission slightly differ from those of fraudulent misrepresentation as the former only requires plaintiff to prove: "(a) a duty to disclose a material fact; (b) a failure to disclose a material fact; and (c) that the failure to disclose a material fact induced the plaintiff to act and, as a consequence, (d) to suffer actual damages." Waldridge v. Homeservices of Kentucky, Inc., 384 S.W.3d 165, 171 (Ky. Ct. App. 2011) (citing Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 641 (Ky. Ct. App. 2003)).

As indicated by the Second Amended Complaint, Plaintiffs believe Crabtree omitted the fact that Coomes had no intention of actually selling Philmo even though he signed the Letter of Intent and the SPA. Crabtree responds by noting that even if he was aware of this fact, he had no duty to disclose this information. The Court is hesitant to address this particular issue as Crabtree waited until his reply brief to really raise this basis for dismissal. Therefore, the Court will provide Plaintiffs an opportunity to respond to this issue before the Court addresses the merits.

For the reasons stated above, Plaintiffs are prohibited from pursuing a theory of fraudulent misrepresentation as to Defendant Crabtree. However, the Court is unwilling to fully dismiss the fraud claim against Defendant Crabtree until Plaintiffs are given a fair chance to respond to Crabtree's argument concerning the duty to disclose. Plaintiffs have 20 days to file a sur-reply. Finally, Plaintiffs' negligent misrepresentation claim is dismissed in full because the claim is identical to a fraudulent misrepresentation claim.

**2. Violations of Section 10(b) of the Securities Exchange Act [Count XIII] and Section 292.320 of the Kentucky Blue Sky Law [Count XIV]**

To assert a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." Ashland, Inc. v. Oppenheimer & Co., 648 F.3d 461, 468 (6th Cir. 2011) (quoting Frank v. Dana Corp., 547 F.3d 564, 569 (6th Cir. 2008)) (internal quotation marks omitted). Further, as mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff must plead scienter in a more exacting nature than what is even required under Fed. R. Civ. P. 9(b). Ricker v. Zoo Entm't, Inc., 534 F. App'x 495, 499 (6th Cir. 2013) (citation omitted). This means that a plaintiff must plead a "strong inference" of scienter, which "must be more than merely plausible or reasonable it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)) (internal quotations omitted). The pleading requirements for violation of KRS 292.320 mirrors that Section 10(b) as the two statutes are "virtually identical." Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 917 (6th Cir. 2007).

In analyzing a private securities claim under Section 10(b), the Court must follow the three-step roadmap outlined by Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). First, "courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." Tellabs, 551 U.S. at 322. Second, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." Id. (citation omitted).  At this stage, "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." Id. at 325.  Finally, the strength of the inference must be gauged by considering "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Id. at 310.

Turning to the present matter, Plaintiffs claim that Crabtree prepared documents for the sale of Philmo with the knowledge that Coomes had no intention of going through with the deal. Plaintiffs fail to articulate any misrepresentation made by Crabtree within their Second Amended Complaint.  As Plaintiffs' securities claims solely involve an omission, the question is whether the omission of this fact,[7] that Coomes had no intention of completing the sale of stock, sufficiently presents a strong inference of scienter.  Here, Plaintiffs do not allege any action on Crabtree's part that is probative of scienter.  In fact, Plaintiffs' responsive brief is devoid of any explanation as to how their Second Amended Complaint provides the necessary strong inference to demonstrate scienter.  The mere fact that Crabtree prepared the documents is not compelling enough to overcome the much more reasonable rival explanation that Crabtree had no knowledge of Coomes' alleged plan.  Therefore, Plaintiffs' claims falling under Section 10(b) of the Securities Exchange Act and KRS 292.320 are dismissed.

### 3. Aiding and Abetting a Breach of the Covenant of Good Faith and Fair Dealing [Count IV]

Crabtree asserts that Plaintiffs cannot maintain a claim for aiding and abetting a breach of the covenant of good faith and fair dealing because that claim does not exist under Kentucky law.  Plaintiffs argue that Kentucky law recognized aiding and abetting claims for contract

---

[7] Crabtree briefly mentions that he believes that this omission constitutes "soft information," which "includes matters of opinion and predictions." Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc., 719 F.3d 498, 504 (6th Cir. 2013).  This argument does not go far as it is objectively verifiable whether or not Coomes actually intended to sell Philmo to Plaintiffs.

disputes in Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S.W.2d 476 (Ky. 1991). Yet, as pointed out by Crabtree, Steelvest involves a claim based on aiding and abetting a breach of a fiduciary duty,[8] not a breach of good faith and fair dealing. Steelvest, 807 S.W.2d at 485 ("As to the claim of aiding and abetting, it has been held that a person who knowingly joins with or aids and abets a fiduciary in an enterprise constituting a breach of the fiduciary relationship becomes jointly and severally liable with the fiduciary for any profits that may accrue."). Despite the lack of case law to support their position, Plaintiffs posit that the Court can easily use the analysis for aiding and abetting of a breach of fiduciary duty for examining the merits of a claim for aiding and abetting a breach of the covenant of good faith and fair dealing. However, the Court believes this issue may be resolved by scrutinizing the underlying claim, a breach of the covenant of good faith and fair dealing.

For Plaintiffs' claim of aiding and abetting a breach of the covenant of good faith and fair dealing to survive, the underlying claim must actually constitute "tortious conduct." Bariteau v. PNC Fin. Servs. Grp., Inc., 285 F. App'x 218, 224 (6th Cir. 2008) (noting that Kentucky law follows Restatement (Second) of Torts § 876 in permitting a claim for aiding and abetting tortious conduct). The problem for Plaintiffs is that federal courts from both the Eastern and Western District of Kentucky have predicted that Kentucky law does not have a cause of action for the breach of the covenant of good faith and fair dealing outside the context of insurance claims. Peacock v. Damon Corp., 458 F. Supp. 2d 411, 419 (W.D. Ky. 2006) (citing Advancmed, LLC v. Pitney Bowes Credit Corp., No. 05-464, 2006 WL 1007467 at *3 (E.D. Ky. Apr. 17, 20060); Ennes v. H & R Block Eastern Tax Service, 2002 WL 226345 at *4 (W.D. Ky.

---

[8] It should be noted that Plaintiffs have alleged a claim of aiding and abetting a breach of fiduciary duty against Crabtree in Count XVIII of their Second Amended Complaint. [DN 77, at 29].

Jan. 11, 2002)).[9]  Recently, the Kentucky Court of Appeals concluded the same as the federal courts.  J.S. v. Berla, 2015 WL 507414, at *4 (Ky. Ct. App. Feb. 6, 2015).  Therefore, because the underlying claim for breach of the covenant of good faith and fair dealing does not exist in this context, a claim for aiding and abetting cannot lie.

Plaintiffs cite to two instances in which Kentucky courts reviewed a claim for breach of good faith and fair dealing and disposed of the claim on factual grounds.  First, in Farmers Bank & Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc., 171 S.W.3d 4, 11 (Ky. 2005), the question was whether the appellate court erred in reversing summary judgment as to the claim of breach of the covenant of good faith and fair dealing.  However, there is no indication in either the opinion from the Kentucky Supreme Court or the Kentucky Court of Appeals that the defendant ever raised the question as to whether Kentucky law allows for that cause of action.  Second, Plaintiff relies on Stelluti Kerr, LLC v. Bastian Material Handling, LLC, 2012 WL 5305730, at *1 (Ky. Ct. App. Oct. 26, 2012) in which the court affirmed the lower court's dismissal of a claim for the breach of good faith and fair dealing.  While it does appear that both courts reviewed the facts of the case in coming to that decision, there, as with Plaintiff's previous citation, is no reason for the Court to believe that either court questioned whether Kentucky law provides for such a claim.  For those reasons, the Court is unwilling to infer from either case that Kentucky adopted a claim for the breach of good faith and fair dealing

---

[9] In Plaintiffs' responsive motion to Coomes' Motion to Dismiss, they identify one case in the Eastern District of Kentucky in which the court declined to dismiss the plaintiff's claim for a breach of duty of good faith and fair dealing.  Advancmed, LLC v. Pitney Bowes Credit Corp., 2006 WL 1007467, at *3 (E.D. Ky. Apr. 17, 2006).  While the reasoning behind this decision is not entirely clear, it is clear that the comment in the Uniform Commercial Code that the court relied on specifically stated that "[t]his section does not support an independent cause of action for failure to perform or enforce in good faith."  Advancmed, 2006 WL 1007467, at *3 (quoting U.C.C. § 1-304).

outside the context of insurance law. Therefore, Plaintiffs' claim for aiding and abetting a breach of the covenant of good faith and fair dealing is dismissed.

### C. Coomes' Dismissal of Claims Based on Fed. R. Civ. P. 12(b)(6) [DN 84]

Defendant Coomes seeks to dismiss two of the claims against him, including negligent misrepresentation (Count VIII) and the breach of the covenant of good faith and fair dealing (Count III). The Court has already determined that there is no independent cause of action for a breach of the covenant of good faith and fair dealing under Kentucky law, and therefore, that claim is dismissed against Coomes. As to negligent misrepresentation, Coomes contends that Plaintiffs fail to meet the pleading standard required under Fed. R. Civ. P. 9(b).

Unlike the negligent misrepresentation claim alleged against Crabtree, Plaintiffs' Second Amended Complaint contains multiple instances of alleged misrepresentations on the part of Coomes. Based on the Second Amended Complaint, it appears as though Plaintiffs essentially put forward three theories of recovery: (1) Coomes misrepresented the fact that he had no intention to sell Philmo; (2) Coomes misrepresented information concerning the contract that he had with the broker; and (3) Coomes continues to misrepresent the fact that he signed the SPA on March 31, 2011. The last theory has already been discussed in the context of Crabtree, and it is clear that Plaintiffs cannot establish reliance. As such, this leaves only the first two theories.

Defendant Coomes' main contention in dismissing Plaintiff's theories for negligent misrepresentation is that Plaintiffs fail to state with particularity the exact statements that were made. As to the sale of Philmo, it seems fairly clear that Coomes represented to Plaintiffs that he intended to sell the company to them; the Letter of Intent along with the SPA make this fact very clear. Further, Plaintiff avers that "[i]n reliance on Coomes promise to sell Philmo, Plaintiffs closed a separate tape converting business in Gainesville, Georgia." [Second Am. Compl., DN

77, at ¶ 17]. These allegations are enough to satisfy the specificity required for a negligent misrepresentation claim as they establish the who, what, when, and why of the alleged misrepresentation.

Next, Plaintiffs' Second Amended Complaint quite extensively details what Coomes told Plaintiffs concerning the purpose of the Promissory Note. Specifically, Plaintiffs allege that Coomes informed them that he needed to execute the Promissory Note in order to avoid the broker's commission. Additionally, Plaintiffs contend that Coomes misrepresented when the contract with the broker would actually end. The Court finds that Plaintiffs supplied enough facts in their Second Amended Complaint to meet the heightened pleading standard as to this theory as well. Therefore, Coomes' motion to dismiss Plaintiff's claim for negligent misrepresentation against him is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant Scott Crabtree's Motion to Dismiss [DN 85] is **GRANTED in part** and **DENIED in part**. It is **GRANTED** as to dismissal of Counts IV, VIII, XIII, and XIV. It is **DENIED** as to all other claims.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a sur-reply no later than **20 days** from the entry of this order regarding their claim for fraud by omission.

**IT IS FURTHER ORDERED** that Defendant Ronald Coomes' Motion to Dismiss [DN 84] is **GRANTED in part** and **DENIED in part**. It is **GRANTED** as to Count III and **DENIED** as to Count VIII.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**
March 17, 2015

cc: counsel of record