UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:12-cv-00057-JHM

BOODNARINE BOODRAM                                          PLAINTIFFS
a/k/a MIKE BOOKDRAM, ET AL.

V.

RONALD GLENN COOMES, PHILMO, INC.,                         DEFENDANTS
and W. SCOTT CRABTREE

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Partial Judgment on the

Pleadings [DN 148] and Plaintiffs' Motion for Leave to File Supplemental Authority [DN 157].

Fully briefed, this matter is ripe for decision.

I. BACKGROUND

In 2010, Defendant Ronald Coomes (hereinafter "Coomes") sought potential buyers to

purchase his company, Philmo, Inc., which manufactured duct tape out of Franklin, Kentucky.

(Second Am. Compl. [DN 77] ¶ 13.)   Soon after, Plaintiff Mike Boodram[1] (hereinafter

"Boodram"), owner and operator of Apollo Manufacturing Group, Inc. of Suwanee, Georgia,

contacted Coomes regarding his interest in acquiring Philmo. Coomes and Boodram discussed

the transaction and entered into a Letter of Intent on December 9, 2010 that detailed Boodram's

plan to purchase Philmo for $2,305,000.00 in a leveraged buyout.   (Defs.' Mem. Supp. Mot.

Partial J. Pleadings [DN 148-1] at 3.)  The Letter of Intent described the acquisition of Philmo as

involving two phases: Boodram would immediately supply $200,000 in exchange for 49% of

_____

[1] Mike Boodram's wife, Shelleza Boodram, is also identified as a Plaintiff in this action, but she did not play a large part in the factual underpinnings of the matter, other than the signing of one document. Therefore, in order to avoid confusion, Mike Boodram will be identified as "Boodram," and collectively, Mike and Shelleza Boodram will be referred to as "Plaintiffs," unless otherwise indicated.

Philmo's stock, and, starting in 2015, Boodram would begin to make scheduled payments for the remaining 51%, totaling $1,492,055.90.   (Id.)   Upon signing the Letter, Boodram soon transferred $200,000 in cash and assets to Coomes.  (Id.)

In addition to the stock purchase, Boodram agreed to work at Philmo as the Director of Operations, intending on implementing significant changes at Philmo, including bringing in new customers, negotiating beneficial contracts with existing customers, and developing brands held by Philmo.  (Second Am. Compl. [DN 77] ¶¶ 24, 26–30.)  Boodram also renegotiated Philmo's contract with 3M, one of Philmo's largest customers, and improved "Patriot Tapes," an underdeveloped brand held by Philmo, all the while Coomes was taking certain actions that threatened the financial well-being of the company.   (Id. ¶¶ 26–30.)  Plaintiffs identify four distinct instances of this harmful conduct:

> a. Coomes owned a controlling interest in Patriot Gage, LLC a separate company. Coomes was running the payroll of Patriot Gage, LLC through Philmo;
> b. Coomes allowed Patriot Gage, LLC to use a substantial portion of Philmo's property rent-free.
> c. Coomes used the assets of Philmo to pay expenses related to real estate that was not owned by Philmo.
> d. Coomes sold the assets of Philmo, including seconds (duct tape that fails to meet the specifications of its customers), on the secondary market and did not record the sales on Philmo's books.

(Id. ¶ 31.)

In March of 2011, Coomes presented Plaintiffs with a Stock Purchase Agreement (hereinafter "SPA"), drafted by Defendant Scott Crabtree (hereinafter "Crabtree"), counsel for Philmo. (Id. ¶¶ 32–33.)  Mike Boodram and Shelleza Boodram executed the SPA on March 8, 2011 and March 6, 2011, respectively. (Id. ¶¶ 35–36.)  However, Plaintiffs allege, Coomes did not sign the SPA on either date. (Id. ¶¶ 35–37, 66–69.)  After Plaintiffs had signed the SPA, Coomes informed them that because he had previously entered into a contract with a broker for

the sale of Philmo, he could not sign the SPA and convey stock to Plaintiffs until the end of that contractual period. (Id. ¶¶ 45–47.)  Further, Coomes explained that he "needed to execute a Promissory Note in Plaintiffs' favor so as to avoid paying a commission to his broker," but that the note "was just a formality, and it did not affect or change their agreement."  (Id. ¶¶ 39–40.) On March 31, 2011, Coomes executed the Promissory Note, drafted by Crabtree, which provided terms for the re-payment of $200,000 plus interest that Plaintiffs had previously paid to Coomes. (Id. ¶ 43.)

Despite issues with closing the sale of Philmo, Boodram continued to comply with the "parties' agreement" by winding down his tape conversion business and contributing $215,000 in equipment and inventory to Philmo to secure future financing. (Id. ¶ 48.)  Philmo even "agreed to pay rent for Plaintiffs' equipment" as "compensation for Coomes' unilateral delay of the closing."  (Id. ¶ 49.)  These payments ended after only two months.  (Id.)  During the entire process of closing his business and transferring assets to Philmo, Boodram avers that he repeatedly attempted to complete the transaction with Coomes.  (Id. ¶¶ 44, 50.)  "[D]espite Plaintiff Mike Boodram's repeated requests," Plaintiffs allege that "Defendants refused to close on the agreement or convey the stock." (Id. ¶ 50.)

Issues also arose concerning Boodram's role as Director of Operations at Philmo. According to Boodram, in June of 2011, Coomes started taking steps to prevent him from performing his work for Philmo by denying him access to Philmo's business records and excluding him from important business meetings.  (Id. ¶¶ 57–60.)  Specifically, Coomes stopped Boodram from attending a significant meeting with one of Philmo's largest customers, 3M, even though Boodram had helped Coomes prepare for it.  (Id. ¶¶ 54–56.)  From this soured relationship, Philmo issued Boodram his final check in June of 2011.  (Id. ¶ 60.)

After being completely excluded from Philmo, Boodram contacted Coomes in order to resolve problems with the initial purchasing deal.  (Id. ¶ 62.)  Boodram claims that Coomes avoided his phone calls, texts, and emails.  (Id.)  Finally, in October of 2011, Boodram received a copy of the SPA, which, at that time, had been executed by Coomes.  (Id. ¶ 65.)  Plaintiffs describe the SPA that they received in October as having particularly unfavorable terms.  (Id. ¶ 68.) For example, although the Letter of Intent originally called for an amortized payment for the remaining 51% of stock to start in 2015, the SPA required a balloon payment of $1.1 million by August 31, 2012. (Id. ¶ 70.)  In addition to an altered payment schedule, the SPA provided a stock buy-back provision which allowed Coomes to "unilaterally" determine that Boodram failed to actively participate in Philmo and to repurchase the stock from Boodram at half the price it was sold to him.  (Id. ¶ 71.)

Plaintiffs surmise that Coomes signed and notarized the SPA at some point after April 13, 2011, not on March 31, 2011 as indicated on the document sent to them in October of 2011.  (Id. ¶¶ 73–75.)  Further, Plaintiffs contend that Coomes was aware that Boodram had closed his company in June of 2011 and that his creditors were pressuring him to close on the Philmo deal. (Id. ¶ 63.) As a result, "Coomes and Crabtree conspired to sign and notarize this SPA to limit Coomes' liability and/or extract a more favorable settlement from Mike Boodram."  (Id. ¶ 67.)

Plaintiffs filed suit on April 27, 2012 against Defendants Coomes and Philmo. (Compl. [DN 1].) On November 20, 2014, Plaintiffs filed their Second Amended Complaint joining Crabtree as a defendant. (Second Am. Compl. [DN 77] ¶ 6.)  Since the filing of their suit, Plaintiffs note that Defendants have continued to misrepresent the date that Coomes signed the SPA in their pleadings. (Id. ¶¶ 82–86.)  Before the Court now is Defendant's Motion for Partial Judgment on the Pleadings in regards to Count II for fraud (against Coomes), Count VI for

notary fraud (against Crabtree), Count VII for civil liability for criminal acts (against both), Count IX for conversion (against both), and Count XVII for conspiracy (against both).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(h)(2) allows Defendants to raise the defense of failure to state a claim for which relief can be granted after the pleadings have closed through a motion for judgment on the pleadings pursuant to Rule 12(c).  "The standard of review for a 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." Fritz v. Charter Tp. Of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). Pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," id., and determine whether the "complaint . . . states a plausible claim for relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 679.  Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 663 (quoting Fed. R. Civ. P. 8(a)(2)).  "But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

#### A.  Fraud (Count II)

Defendant Coomes has moved for judgment on the pleadings on Count II for fraud against him.  The elements of fraud in Kentucky are as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.  UPS v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999).  Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This standard does not require "detailed factual allegations," but a pleading is insufficient if it only tenders "naked assertion[s] . . . without some further factual enhancement." Twombly, 550 U.S. at 555–57 (2007).  However, pleadings for claims sounding in fraud are held to a higher standard under Rule 9.  Id. at 569 n. 14.  For a claim of fraud, the "complaint must state the facts constituting the fraud with particularity."  KSA Enterprises, Inc. v. Branch Banking & Trust Co., No. 5:14-CV-00182, 2015 WL 5611655, at *3 (W.D. Ky. Sept. 23, 2015) (citing Fed. R. Civ. P. 9(b); Chesbrough v. VPA, P.C., 655 F.3d 461, 467 (6th Cir. 2011)).  For practical purposes of satisfying Rule 9(b), the Sixth Circuit requires that the pleading "specify 1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent."  Morris Aviation, LLC v. Diamond Aircraft Indus., Inc., 536 F. App'x 558, 562 (6th Cir. 2013) (citing Republic Bank & Trust Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012)).  "The purposes animating Civil Rule 9(b) are '(1) to alert defendants to the particulars of the allegations against them so they can intelligently

respond; (2) to prevent fishing expeditions; (3) to protect defendants' reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters.'" KSA Enterprises, 2015 WL 5611655, at *3 (citing SFS Check, LLC v. First Bank of Del., 774 F.3d 351, 358 (6th Cir. 2014)).

Plaintiffs' Second Amended Complaint avers that "[f]rom October 25, 2011 through the summer of 2014 . . . Coomes repeatedly presented the SPA as being duly executed by Coomes on March 31, 2011." (Second Am. Compl. [DN 77] ¶ 79.)  Plaintiffs also allege that Coomes "intended to bind Plaintiffs to the agreement without Coomes being similarly [bound]," he disseminated false and misleading information, and he "continued to represent an intent to sell despite his decision not to complete the sale." (Id. ¶¶ 110, 112, 117.)  These allegations provide the necessary elements to satisfy the heightened pleading standard as it contains the speaker, the misrepresentation, the approximate time that the statement was made, and how the statement was fraudulent.

Defendants argue that "Plaintiffs' fraud claim against Coomes is entirely dependent on their claim that Coomes breached his agreement to sell Philmo." (Defs.' Mem. Supp. Mot. J. Pleadings [DN 148-1] at 7.)  While it is true that a plaintiff cannot maintain an action in fraud that is dependent on a claim that the defendant breached a contract with the plaintiff, Solid Gold Jewelers v. ADT Sec. Systems, Inc., 600 F. Supp. 2d 956 (N.D. Ohio 2007), fraudulent inducement is an exception to this general rule.  Hanson v. American National Bank & Trust Company, 865 S.W.2d 302, 307 (Ky. 1993).  As such, s fraudulent inducement claim can coexist with a breach of contract claim.  Id.  This is because "when someone makes a representation knowing that he has no intention of carrying it out, an action for fraud will lie."  KSA Enterprises, 2015 WL 5611655, at *6 (citing PCR Contractors, Inc. v. Danial, 354 S.W.3d 610,

613–14 (Ky. Ct. App. 2011) (collecting cases); Republic Bank & Tr. Co. v. Bear Stearns & Co., 683 F.3d 239, 253 (6th Cir. 2012)); see Schroerlucke v. Hall, 249 S.W.2d 130, 131 (Ky. 1952) ("[E]ven though the representations relate to the future, if they are positively stated in order to induce another to do something and the party making the representations has no intention of performance, such statements may be misrepresentation of facts on which fraud may be predicated.").

Defendants only challenge Plaintiffs' allegation of fraudulent inducement. Plaintiffs have asserted that Coomes never intended to be bound by the agreement to sell Philmo to Plaintiffs, thereby fraudulently inducing Plaintiffs to enter into the contract under which Coomes never intended to perform. (Second Am. Compl. [DN 77] ¶¶ 110, 120.) These statements give rise to a cognizable claim fraudulent inducement, as the fraud extends far beyond the breach of contract and exhibits Coomes' prior present intention to commit a future breach. Defendants argue that Plaintiffs pled in the Second Amended Complaint that Coomes actually decided to breach the contract after entering into the agreement with Plaintiffs, thus rendering Plaintiffs' fraudulent inducement claim untenable. (Id. ¶ 111.) Defendants state that if Plaintiff's assertion is true, then because Coomes entered the contract with the intention of performing and only changed his mind after promising to sell Philmo, he could not have fraudulently induced Plaintiff to enter into the contract. Despite this conflict, Plaintiffs have stated a viable claim for fraudulent inducement against Coomes, as they have asserted repeatedly that he entered into the contract with no intention of being bound and thereafter constantly and fraudulently represented his intention to perform, all the while never intending to follow through with that promise. (Id. ¶¶ 110, 112, 113, 115, 120, 129, 130, 133.) At this time, the Court cannot determine that Plaintiffs' fraud claim is wholly without merit.

**B.  Notary Fraud (Count VI)**

Defendant Crabtree also has moved for judgment on the pleadings on Count VI for notary fraud.  Plaintiffs assert that though Crabtree affixed his official seal and claims to have acknowledged the SPA on March 31, 2011, he did not actually acknowledge Coomes' execution of the SPA on that date.  This claim seems to be another way to repackage the fraud claim against Crabtree, which this Court has previously held was viable.  (Mem. Op. [DN 99] at 12.)  Although not recognized as a specific type of fraud by Kentucky courts, those courts that have addressed the issue of notary fraud have concluded that notary fraud claims must be treated as typical fraud claims and must be pled with the same heightened level of particularity under Rule 9(b).  See English v. Fed. Nat. Mortgage Ass'n, No. CIV.A. 13-2028 CCC, 2013 WL 6188572, at *5 (D.N.J. Nov. 26, 2013) (citing Tredennick v. Bone, 323 F. App'x 103, 105 (3d Cir. 2008)); Harlow v. LSI Title Agency, Inc., No. 2:11-CV-01775-PMP, 2012 WL 5425722, at *4 (D. Nev. Nov. 6, 2012) (citing Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007)); Hine v. Bank of Am., N.A., No. 2:11-CV-1537 JCM PAL, 2012 WL 273385, at *3 (D. Nev. Jan. 30, 2012); Elias v. Stewart Title of Illinois, No. 09 C 6773, 2010 WL 4482102, at *5 (N.D. Ill. Nov. 1, 2010) (citing Borsellino v. Goldman Sachs Grp., Inc., 477 F.3d 502, 507 (7th Cir. 2007)).

Notary fraud has not yet found its place in Kentucky jurisprudence, and the Court is inclined to follow other courts' treatment of notary fraud claims.  Here, the Plaintiffs have not stated how the damages from the notary fraud claim would be different than or separate from the damages resulting from the standard claim of fraud against Defendant Crabtree.  Under the fraud count, Plaintiffs allege that Defendant Crabtree fraudulently executed and notarized the SPA.  The Court finds that this claim is subsumed within Plaintiffs' general fraud claim against Crabtree, particularly since notary fraud is not a recognized tort in Kentucky.

## C.  Civil Liability for Criminal Acts (Count VII)

Plaintiffs assert that Defendants should be held civilly liable for committing various criminal acts under KRS § 446. 070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  Generally, "civil remedies for violations of state criminal statutes are . . . available in Kentucky through [KRS] § 446.070." Graham v. City of Hopkinsville, Ky., No. 5:12-CV-23, 2013 WL 2120847, at *11 (W.D. Ky. May 15, 2013).  Though this statute originally codified negligence per se, "[i]f a [Kentucky] statute prohibits specific conduct, but fails to specify a remedy, we may look only to [§] 446.070 to provide it." Christian Cty. Clerk ex rel. Kem v. Mortgage Elec. Registration Sys., Inc., 515 F. App'x 451, 456 (6th Cir. 2013) (quoting Highlands Hosp. Corp. v. Castle, No. 2007-CA-002432-MR, 2010 WL 2787906, at *5 (Ky. Ct. App. July 16, 2010) (citation omitted) (unpublished)).   However, KRS "§ 446.070 gives a right of action 'only to persons suffering an injury as a direct and proximate result [of a violation]; and then only for such damages as they may actually sustain.'" Id. (quoting Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781, 800 (Ky. 2004)).  Additionally, "[i]t follows that if the defendant was not in the class of persons whose conduct was intended to be regulated by the statute, the defendant could not violate the statute and KRS [§] 446.070 simply would not apply." Id. (quoting Davidson v. Am. Freightways, Inc., 25 S.W.3d 94, 100 (Ky. 2000)).  Plaintiff now brings several claims against Defendants under KRS § 446.070, alleging civil liability for criminal acts committed under KRS §§ 517.050, 523.020, 523.030, and 523.040.  (Second Am. Compl. [DN 77] ¶ 167.)

### i. Falsifying Business Records

Plaintiffs allege that both Defendant Coomes and Crabtree violated the criminal statute KRS § 517.050 for falsifying business records.  (Second Am. Compl. [DN 77] ¶ 168.)    To say the least, there is a lack of case law in which a plaintiff has brought a civil action under this criminal statute.  This District has previously noted that it "was unable to find a single case where a court applied § 517.050 in the manner that the plaintiff request[ed] the [c]ourt apply it" in a civil liability context.  Graham, 2013 WL 2120847, at *11.  Not much has changed since then.  The court in Graham simply assumed that "Kentucky courts would allow maintaining such a cause of action," yet dismissed the claim because it was unclear that the document in question constituted a business record and that the plaintiffs pointed to insufficient facts to demonstrate that the record at issue was created with the intent to defraud.  Id.

Under KRS § 517.050:

> (1) A person is guilty of falsifying business records when, with intent to defraud, he:
>
>> (a) Makes or causes a false entry to be made in the business records of an enterprise; or
>> (b) Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or
>> (c) Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by the nature of position; or
>> (d) Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise.

As in Graham, assuming Kentucky courts would even allow a plaintiff to maintain a civil claim for this potential criminal act, the document in question is not a business record.  A business record is one kept by a business for the purpose of evidencing its condition or activity.  KRS § 517.010(2).  The SPA allegedly falsified is a private document between a buyer and a seller of

stock of a company.  It is not a record of the activity of the company itself.  Therefore, Plaintiffs have not stated a plausible claim for civil liability under KRS § 446.070 and KRS § 517.050.

### ii. Perjury and False Swearing in Judicial Proceedings

Plaintiffs also assert that both Defendants committed perjury and false swearing under KRS § 523.020(1) and KRS § 523.040(a): Coomes by knowingly making materially false statements in his deposition, answer, counterclaim, and interrogatories; and Crabtree by allowing his client (Coomes) to give false testimony in Coomes' deposition.  (Second Am. Compl. [DN 77] ¶¶ 169, 172.)  KRS § 523.020(1) states that "[a] person is guilty of perjury in the first degree when he makes a material false statement, which he does not believe, in any official proceeding under an oath required or authorized by law."  And KRS § 523.040(1) states that "[a] person is guilty of false swearing when he makes a false statement which he does not believe under oath required or authorized by law."  While Plaintiffs claim that Defendants made or suborned false testimony, all statements in question were given during the course of legal proceedings and subject to the judicial-proceeding privilege.

In terms of civil liability, the Sixth Circuit has held that "[t]o accept . . . that [KRS §] 446.070 authorizes civil recovery [for perjury in a legal proceeding], we would have to conclude that the statute abrogates the judicial-proceeding privilege. But Kentucky courts have consistently recognized the privilege notwithstanding [KRS §] 446.070."  Heavrin v. Nelson, 384 F.3d 199, 203 (6th Cir. 2004).  Accordingly, "the judicial-proceeding privilege has remained vital in Kentucky."  Id. (citing Schmitt v. Mann, 163 S.W.2d 281, 283 (Ky. 1942); McClarty v. Bickel, 159 S.W. 783, 784 (Ky. 1913); Reed v. Isaacs, 62 S.W.3d 398, 399 (Ky. Ct. App. 2000); Lawson v. Hensley, 712 S.W.2d 369, 370 (Ky. Ct. App. 1986)).  Though Kentucky "decisions do not expressly hold that the judicial-proceeding privilege survives [KRS §] 446.070," the Sixth

Circuit has "found no case in which the statute was held to trump the privilege," meaning it did not reject the proposition that the privilege survives despite KRS § 446.070.  Id.

As such, "[i]t is well settled that a witness who offers testimony, even if perjured, cannot be liable in a civil action for that testimony, as testimony in a judicial proceeding is privileged as a matter of public policy."  Heavrin v. Boeing Capital Corp., 246 F. Supp. 2d 728, 733 (W.D. Ky. 2003), aff'd sub nom. Heavrin v. Nelson, 384 F.3d 199 (6th Cir. 2004) (citing Briscoe v. LaHue, 460 U.S. 325, 330 (1983) (holding that the judicial privilege bars a private cause of action under 42 U.S.C. § 1983 for perjured testimony of a police officer in court); Bryant v. Kentucky, 490 F.2d 1273, 1274 (6th Cir. 1974) (holding that a witness before a grand jury who provides false testimony is liable for a criminal action in perjury, but not for any civil action such as malicious prosecution since testimony in a judicial proceeding is privileged as a matter of public policy); Lawson, 712 S.W.2d at 370 (observing that the law in Kentucky is the same as the general rule that a civil action for damages will not lie for perjury)); see Butts v. Deibler, No. 4:12-CV-00114-JHM, 2013 WL 3423770, at *16 (W.D. Ky. July 8, 2013); McClarty, 159 S.W. at 784 (noting that no civil action for perjury or false swearing will lie against a witness who gave false testimony "because it is a well-settled rule in practically all jurisdictions that the testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him"); Smith v. Hodges, 199 S.W.3d 185, 192 (Ky. Ct. App. 2005) (ruling no civil action will lie against a witness for perjury or false swearing under the judicial proceedings privilege).  Under the widely accepted American Rule, protection that the privilege affords requires "that a statement made or written in a judicial proceeding must be pertinent and relevant."  Smith, 199 S.W.3d at 193.  Therefore, because depositions, answers, counterclaims, and interrogatory answers are clearly relevant and pertinent to judicial

proceedings, they are afforded protection from any civil liability under the privilege.  See id. at 194 (finding specifically that depositions should be afforded the absolute privilege); see also Loven v. Romanowski, No. CIV.A. 204CV00108, 2005 WL 2931996, at *2 (W.D. Va. Nov. 4, 2005) (finding that deposition testimony and statements made in other discovery devices should be afforded the protection of this privilege because they are all "obviously" relevant and pertinent to the judicial proceeding).

It is clear that under the American Rule and the direction of this Circuit, the testimony given in Coomes' deposition, answer, and counterclaim was privileged and immune from civil liability.[2]  Additionally, Plaintiffs cannot state a plausible claim of relief against Crabtree under KRS § 523.020 because under the plain language of the statute, he was not "mak[ing] a material false statement" by simply acting as counsel for his client in a deposition in which false statements may or may not have occurred.  Regardless, it would appear that any involvement on Crabtree's part in the deposition was privileged under the American Rule.  Therefore, because both Defendants are immune from civil liability for any potentially perjured or falsely sworn testimony, Plaintiffs have failed to state a claim for civil liability here.

### iii. Perjury and False Swearing in Notarization

Plaintiffs also claim that Crabtree violated KRS § 523.040(1), for false swearing, and KRS § 523.030, for perjury in the second degree, which states that "[a] person is guilty of perjury in the second degree when he makes a material false statement which he does not believe in a subscribed written instrument for which an oath is required or authorized by law with the

---

[2] Plaintiffs offer two cases rejecting the American Rule and the dictates of this Circuit.  Plaintiffs urge the Court to consider Williams v. BASF Catalysts LLC, 765 F.3d 306, 319 (3d Cir. 2014), reh'g denied (Dec. 1, 2014) and Matsuura v. E.I. du Pont de Nemours & Co., 102 Haw. 149, 73 P.3d 687 (2003), opinion after certified question answered, 330 F. Supp. 2d 1101 (D. Haw. 2004), rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353 (9th Cir. 2005).  Though these courts attempted to limit the judicial-proceeding privilege to defamation actions, that stance is not the one taken by this Circuit.  This Court will follow controlling Sixth Circuit precedent, which protects all oral and written statements that are pertinent and relevant made in the course of judicial proceedings, even if they are potentially perjured.

intent to mislead a public servant in the performance of his official functions." Plaintiffs argue that Crabtree should be civilly liable for the criminal act of backdating the notarization of the SPA under the authority of KRS § 446.070. Here, Crabtree does not satisfy the second element of the test for liability under KRS § 446.070, Crabtree was not in the class of people intended to be regulated by the perjury and false swearing statutes, assuming, of course, that the Kentucky Supreme Court would even apply KRS § 446.070 to second degree perjury and false swearing.

As a notary, Crabtree was authorized to administer oaths in the Commonwealth of Kentucky. See KRS § 62.020(1)(c) ("The official oath of any officer may be administered by . . . Any county judge/executive, notary public, clerk of a court, or justice of the peace, within his district or county."); Owsley v. Com., 428 S.W.2d 199 (Ky. 1968) ("Notary public is authorized to administer oath to an affidavit."). The Kentucky Secretary of State describes a notary as one who "is authorized to administer oaths and take proof of execution and acknowledgement of instruments. Acknowledgement is a method of verifying that a person's signature on a document is from the person appearing before a notary and whose identity was reasonably verified by the notary." Notary Guidelines, Kentucky Secretary of State Alison Lundergan Grimes (Aug. 2011), http://www.sos.ky.gov/bus/businessrecords/notaries/Documents/NotaryGuidelines.PDF. In an acknowledgment, "[t]he person taking an acknowledgment shall certify" two things: "(1) The person acknowledging appeared before him and acknowledged he executed the instrument; and (2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument." KRS § 423.130.

Plaintiffs allege that Crabtree, as a notary, should be held civilly liable for second degree perjury and false swearing. This necessarily means that Crabtree must have been in "the class of

persons whose conduct was intended to be regulated by the statute[s]."   Davidson v. Am. Freightways, Inc., 25 S.W.3d 94, 100 (Ky. 2000).  This is not the case.  Under the plain language of the second degree perjury and false swearing statutes, the conduct intended to be regulated is conduct that one might commit in front of a notary, such as making false statements "under oath."  Bradley v. Com., 53 S.W.2d 215, 215 (1932) (affirming defendant's conviction of false swearing in front of a notary); Strader v. Com., 42 S.W.2d 736, 737 (1931) (finding defendant's indictment proper when he falsely swore in front of a notary public).  Whereas, the conduct allegedly performed by Crabtree was that of a notary taking a false or fraudulent acknowledgment of another's oath.  Crabtree was not under oath himself, but, at most, he was falsely acknowledging Coomes' oath while notarizing the SPA.  In other words, both criminal statutes at issue hold *declarants* liable for false statements made *under oath*.  And, under the plain language of perjury in the second degree, the defendant must give the false statement with the "intent to mislead a public servant in the performance of his official functions."  KRS § 523.030(1).  Plaintiffs have not alleged that Crabtree has, in anyway, attempted to mislead any public officials.[3]  Accordingly, Plaintiffs have not stated a valid claim for civil liability here.

_____

[3] The Kentucky Crime Commission has explained the purposes and meanings of second degree perjury and false swearing clearly in Commentary provided along with KRS § 523.020:

> *Perjury in the second degree:* KRS [§] 523.030 is designed to enable government agencies to demand truthful statements on written instruments for which an oath is required or authorized. This applies equally to forms bearing notice of penalty as well as to notarized affidavits. In the latter case, even though the declarant did not actually go through the formality of swearing to the statement, he was aware of the recitation in the document at the time he made the statement and if he intended that it should be represented as a sworn statement.

> This degree of the offense contains one additional element. It must be shown that the declarant intended to mislead a public official in the performance of his official duties. If the false statement concerns facts which the actor believes would have no bearing on the disposition of his application or report, he is liable for the lesser offense of false swearing (KRS [§] 523.040). The rationale underlying this approach, adopted in other jurisdictions, is that there is less likelihood of confusion as to materiality in written documents than in testimonial situations, and a false statement on a trivial or largely irrelevant matter should be punished as a less serious offense.

### D.  Conversion (Counts IX and X)

Plaintiffs additionally assert claims for conversion against Defendants Coomes and Philmo.  "Conversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another."  James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC, 941 F. Supp. 2d 807, 826 (E.D. Ky. 2013) (citing Oliver v. Hilliard, Nos. 2010–CA–1138–MR, 2010–CA–1236–MR, 2010–CA–1428–MR, 2010–CA–1479–MR, 2013 WL 762593, at *7 (Ky. Ct. App. Mar. 1, 2013) ("Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."); St. Auto. Mutual Ins. Co. v. Chrysler Credit Corp., 792 S.W.2d 626, 627 (Ky. Ct. App. 1990)).  Under Kentucky law, a claim of conversion consists of the following elements:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

Jones v. Marquis Terminal, Inc., 454 S.W.3d 849 (Ky. Ct. App. 2014), reh'g denied (July 15, 2014), review denied (Mar. 25, 2015).  Defendants contend that Plaintiffs' claim fails under requirement (5) because Plaintiffs made no demand for the property.  Plaintiffs aver that they made no demand because it would have been futile, as Coomes, in charge of Philmo, would not have ordered Philmo to return the property.  Plaintiffs further allege that the demand requirement is not always a necessary element of the tort.  Kendrick v. Standard Fire Ins. Co., No. CIV.A.06

---

As is evident from the plain language and the purposes of these statutes, Crabtree was clearly not in the category of defendants contemplated by the statute, as he was not under oath and Plaintiffs have not alleged that he was attempting to mislead a public official.

141 DLB, 2007 WL 1035018, at *12 (E.D. Ky. Mar. 31, 2007) (citing <u>Joseph Goldberger Iron Co. v. Cincinnati Iron & Steel Co.</u>, 154 S.W. 374 (Ky.1913)).  "[W]here conversion has occurred by way of a wrongful taking at the outset . . . demand and refusal need not be proved."  <u>Id.</u> (citing <u>Joseph Goldberger Iron</u>, 154 S.W. at 375).  Here, Plaintiffs allege that Coomes and Philmo unlawfully converted their assets from the beginning, as Coomes "had no intention to be bound by his promises to Plainiffs" to transfer an interest in Philmo in exchange for Plaintiffs' property.  (Second Am. Compl. [DN 77] ¶ 113.)  Additionally, Plaintiffs claim that "Coomes converted assets of Philmo for his personal benefit and the benefit of his other corporations."  (<u>Id.</u> ¶ 186.)  Therefore, Plaintiffs have met the pleading requirements and stated a viable claim against Defendant Coomes and Philmo for conversion.

Defendants also argue that "[w]hile a conversion action may be maintained for the recovery of money physically taken by defendant from plaintiff's possession, a conversion action will not lie to enforce a mere obligation to pay."  <u>Agnew Truck Serv. v. Ranger Nationwide, Inc.</u>, No. 90–34 P(J), 1992 WL 437629, at *5 (W.D. Ky. Apr. 20, 1992) (citing <u>Sherman v. Adams</u>, 194 S.W.2d 625 (Ky. 1946); 89 C.J.S., Trover and Conversion, § 23 (1955)).  Additionally, Defendants rely upon the idea that a "conversion claim cannot be brought where 'the property right alleged to have been converted arises entirely from the [plaintiff's] contractual rights.'"  <u>Beacon Enter. Solutions Grp. v. MDT Labor, LLC</u>, No. 3:12–CV–759–H, 2013 WL 253134, at *4 (W.D. Ky. Jan. 22, 2013) (quoting <u>Davis v. Siemens Med. Solutions USA, Inc.</u>, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005)); <u>see also</u> <u>Scatuorchio Racing Stable</u>, 941 F. Supp. 2d at 827; <u>Pioneer Res. Corp. v. Nami Res. Co.</u>, LLC, No. 6:04–465–DCR, 2006 WL 1778318, at *12 (E.D. Ky. June 26, 2006) ("A conversion claim and a breach of contract claim are not always incompatible.  However, a conversion claim will not exist if the property right alleged to have

been converted arises entirely from the contractual rights to compensation."));  Atmos Energy

Corp. v. Honeycutt, Nos. 2011–CA–601–MR, 201–CA–783–MR, 2013 WL 285397, at *11, (Ky.

Ct. App. Jan. 25, 2013).

Here, Plaintiffs allege that they "tendered $175,000 in cash and $25,000 in other assets to

Coomes in exchange for Philmo."  (Second Am. Compl. [DN 77] ¶ 181.)  Coomes then

"accepted Plaintiffs' $200,000 total payment, but failed to transfer any ownership interests to

Plaintiffs." (Id. ¶ 182.)  And, "Plaintiffs also contributed their equipment and inventory from the

closure of the tape conversion business valued by the parties at $215,000," (Id. ¶ 183), "in

compliance with the parties' agreement" (Id. ¶ 48.).  Defendants are correct in that Plaintiffs

"cannot maintain a claim[s] for conversion inasmuch as [the] 'sole property right alleged to have

been converted is the contractual right to compensation.'"  First Const., LLC v. Gravelroad

Entm't, LLC, No. CIV. 6:07-155-DCR, 2008 WL 2038878, at *5 (E.D. Ky. May 12, 2008)

(quoting Ashland, Inc. v. Windward Petroleum, No. CIV.A. 04-554-JBC, 2006 WL 1913364, at

*6 (E.D. Ky. July 11, 2006)).  However, the Court does not have a copy of the contract and is

unaware of the exchange of consideration and subsequent obligations thereunder.  The Court has

no way of determining whether Defendants merely breached their contractual obligations when

they did not transfer rights in Philmo or if Defendants actually converted the property.  The

Court would need to examine the contract itself and have a firmer factual basis in order to

accurately make this determination.  Accordingly, because the conversion of funds and assets has

not been shown to be coextensive with the nonperformance of the agreement between the parties,

Plaintiffs' claim for conversion cannot be dismissed at this time.[4]

---

[4] Plaintiffs allege two separate claims for conversion: one for direct conversion (Count IX) and one for derivative conversion (Count X).  Because both of these claims are premised on the same facts, the Court has treated them in the same manner.

### E.  Conspiracy (Count XVII)

Plaintiffs allege that Coomes and Crabtree together conspired to cause Plaintiffs damage. (Second Am. Compl. [DN 77] ¶¶ 262–63.)  "A conspiracy is inherently difficult to prove. Notwithstanding that difficulty, the burden is on the party alleging that a conspiracy exists to establish each and every element of the claim in order to prevail." James v. Wilson, 95 S.W.3d 875, 896 (Ky. Ct. App. 2002).  In order to state a claim for civil conspiracy under Kentucky law, the plaintiffs must show that the defendants agreed to "do by some concerted action an unlawful act." Montgomery v. Milam, 910 S.W.2d 237, 239 (Ky. 1995).  However, civil conspiracy is not a free-standing claim; "it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V., No.2008–CA–002389–MR, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010) (citing Davenport's Adm'x v. Crummies Creek Coal Co., 184 S.W.2d 887, 888 (Ky. 1945)).  The Kentucky Supreme Court has explained this concept, noting that "there is no such thing as a civil action for conspiracy, noting that the action is for *damages caused by acts committed pursuant to a formed conspiracy*." James, 95 S.W.3d at 897 (emphasis added) (citing Davenport's Adm'x, 184 S.W.2d at 888).  Therefore, Count XVII alleging civil conspiracy as a free standing claim is dismissed.

### IV. MOTION TO FILE SUPPLEMENTAL AUTHORITY

Plaintiffs ask for leave to file supplemental authority, namely Bierman v. Klapheke, 967 S.W.2d 16 (Ky. 1998).  Generally, a district court such as this Court "has the discretion to grant a request to supplement the pleadings." Merrick v. Diageo Americas Supply, Inc., 5 F. Supp. 3d 865, 870 (W.D. Ky. 2014), aff'd, 805 F.3d 685 (6th Cir. 2015) (citing Fed. R. Civ. P. 15(d);

Schuckman v. Rubenstein, 164 F.2d 952, 958–59 (6th Cir. 1947)).   Therefore, the Court will

exercise its discretion to allow for Plaintiffs to file leave of supplemental authority.

## V. CONCLUSION

For foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial

Judgment on the Pleadings [DN 148] is **DENIED** with respect to Count II for fraud against

Coomes and Counts IX and X for conversion against Coomes and Crabtree.   It is **GRANTED**

with respect to Count VI for notary fraud against Crabtree, Count VII for civil liability for

criminal acts against Coomes and Crabtree, and Count XVII for civil conspiracy against Coomes

and Crabtree.

**IT IS FURTHER ORDERED**, Plaintiff's Motion for Leave to File Supplemental

Authority [DN 157] is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 9, 2016

cc: counsel of record